IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA      :      CRIMINAL ACTION
                              :
        v.               :
                              :
MARY LOUISE DENESE SLAEY      :      NO. 05-704-2

MEMORANDUM

Bartle, C.J.                                  April 26, 2006

Defendant Mary Louise Denese Slaey has been indicted in this District for:  (1) conspiracy to defraud the United States by submitting false invoices to the General Services Administration ("GSA"); (2) defrauding the United States; and (3) bribery of a government official.  See 18 U.S.C. §§ 286, 287, and 201.  Before the court is the motion of defendant to suppress evidence.

I.

The court held an evidentiary hearing on the pending motion and makes the following findings.  In 2005, James Adams, a special agent in the office of the Inspector General of GSA, was engaged in a fraud and bribery investigation related to a contract in which Systems Integration & Management, Inc. ("SIM") agreed to provide GSA with certain computer, web site, and related technological services.  Defendant was SIM's owner and Chief Executive Officer.

On May 4, 2005, Adams submitted an application and affidavit in support of a search warrant to a United States

Magistrate Judge in the Eastern District of Virginia.  The application cited the pertinent sections of the federal criminal code.[1]  The place to be searched was Suite 820, 8614 Westwood Center Drive in Vienna, Virginia, where SIM's office was located. Accompanying the affidavit was a motion to seal signed by a Special Assistant United States Attorney in the Eastern District of Virginia.  The motion requested that the court "issue an Order sealing the application for a search warrant and the affidavit in support of the search warrant, together with this Motion to Seal and proposed Order, until the United States moves to unseal these documents."  The stated basis for the motion to seal the application and affidavit was the need to protect the identity of a confidential source so as not to jeopardize the investigation.

The motion did not seek the sealing of the warrant or its attachments.  It simply stated, "Notwithstanding this Motion to Seal, the United States requests authorization to leave a copy of the search warrant, without any attachments, at the location to be searched."  Nothing was said in support of the requested authorization to omit the attachments.  The Magistrate Judge issued the warrant and an Order to Seal on that same day, May 4, 2005.  The Order provided in relevant part, "The United States is

---

1.  The application referenced 18 U.S.C. §§ 287, 286, 1341, 1510 and 201.  Defendant has argued that the warrant should also have cited the statutory provisions.  We disagree.  There is no constitutional or other requirement that the warrant itself identify the sections of the criminal code on which the warrant is predicated.  See United States v. Grubbs, 126 S. Ct. 1494, 1500-01 (2006).

authorized to leave a copy of the search warrant, without attachments, at the location to be searched."[2]

The warrant that was issued identified on its face the address of SIM's office suite to be searched but contained a more detailed description, including a picture of the building, in Attachment A.  As to the property to be seized, the warrant simply noted, "See Attachment B."  Attachment B, which consisted of three pages, contained an expansive list of documents and computer records of defendant, SIM, and SIM's employees.

On the same day that the warrant was approved, Adams held an operations briefing during which he summarized for eight other law enforcement officers the investigation and the allegations against the defendant.  He reviewed the warrant, along with Attachments A and B, with the officers and handed each of them a copy of the supporting affidavit for review.  The warrant was executed by Adams and these eight other law enforcement officers, the next day, May 5, 2005.  Neither defendant nor any of SIM's employees was present at the time of the search.  The search took 12 hours, and many computers, computer disks, and documents, including documents related to the estate of defendant's mother, were removed.  Adams testified on

_____

2.  Local Criminal Rule 49 of the United States District Court for the Eastern District of Virginia allows a Government motion to seal a warrant, complaint, supporting affidavit or indictment. It must be accompanied by "a statement as to why sealing is necessary, and why another procedure will not suffice."  As noted, the motion requested only that the warrant application and probable cause affidavit be sealed.  There was no such request for the sealing of the warrant or its attachments.

direct examination at the suppression hearing that at the conclusion of the search he left a copy of the warrant with the attachments as well as a copy of an inventory of what he and the fellow agents took.  However, on cross-examination, he was much less certain about the attachments.  He merely "thought" he left a copy of Attachments A and B although he "could be mistaken."

According to the defendant, she found only the inventory and the one-page warrant without attachments when she returned to the office sometime after the search and seizure had taken place.  Within several weeks after the search, her attorney in Virginia requested a copy of Attachments A and B from an Assistant United States Attorney in Philadelphia, and copies were then provided.  This request for the missing attachments made after the search is consistent with the Government's motion to seal and the order to seal, which authorized the agent not to leave these attachments at SIM's office.  The Government clearly did not want the agent to leave a copy of Attachment B on the premises and persuaded the Magistrate Judge to issue an order to this effect.  We believe that the agent acted in accordance with the Government's agenda.  We find that while the agent had with him a copy of Attachments A and B during the search, he left at SIM's office at the completion of the search only a copy of the less than detailed inventory and the first page of the warrant and did not leave a copy of the attachments.  We further find

-4-

that the failure to leave the attachments was intentional and deliberate.[3]

II.

Defendant argues that the warrant was constitutionally defective under the Fourth Amendment and requires the suppression of all evidence taken from the office of SIM on May 5, 2005.[4]

The Fourth Amendment to the Constitution reads:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

Defendant relies on the Supreme Court's recent decision in <u>Groh v. Ramirez</u>, 540 U.S. 551 (2004). There, a special agent of the Bureau of Alcohol, Tobacco and Firearms ("ATF") had information that unregistered firearms were in the home of one Joseph Ramirez. The ATF agent filed an application for a search warrant together with a supporting affidavit with a Magistrate Judge who approved and signed the warrant. While the application described with sufficient particularity the items to be seized, the warrant itself did not describe the items and did not incorporate by reference either the application or the affidavit.

---

3.   Contrary to the Government's assertion, the pictures of SIM's office taken by the agents do not show a copy of Attachment B left on defendant's desk chair.

4.   Defendant does not rely on the absence of Attachment A in connection with her motion to suppress evidence.

-5-

At the conclusion of the search, the ATF agent left a copy of the warrant with Mrs. Ramirez, who was present during the search, but did not leave a copy of the application which had been sealed by the Magistrate Judge.  The following day the ATF agent sent a copy of the application to the Ramirezes' attorney at the latter's request.

The Supreme Court held that the search was unreasonable under the Fourth Amendment and that the action for damages under Bivens v. Six Unknown Fed. Narcotics Agents, 403 U.S. 388 (1971), could go forward because the agents did not have the benefit of qualified immunity.  The Court explained that regardless of the description on the warrant application, "the warrant did not describe the items to be seized at all.  In this respect, the warrant was so obviously deficient that we must regard the search as 'warrantless' within the meaning of our case law." Groh, 540 U.S. at 558 (emphasis in original).  The Court emphasized that the description of the property to be seized must be contained in the warrant or at least be incorporated by reference and that the warrant, including any description incorporated by reference, must be present at the search because possession of the warrant "greatly reduces the perception of unlawful or intrusive police conduct." Id. at 561-62 (quoting Illinois v. Gates, 462 U.S. 213, 236 (1983)).

Unlike Groh, the Magistrate Judge here incorporated by reference into the warrant the description of the property to be seized.  In addition, unlike Groh, the agent had in his

-6-

possession during the search a copy of the warrant with the judicially approved description.  The Supreme Court in <u>Groh</u> noted that there was no constitutional requirement to provide a copy of the warrant to the occupant of the premises at the outset of or during the search, at least where no request was made.  <u>Id.</u> at 562 n.5.  The Supreme Court has reiterated this point in <u>United States v. Grubbs</u>, 126 S. Ct. 1494, 1501 (2006).  Thus, the violation of the Fourth Amendment that occurred in <u>Groh</u>, that is, the execution of a search with a warrant lacking a description of the property to be seized, did not occur here.

This, however, is not the end of the analysis. Defendant further argues that the evidence should be suppressed because the agent did not leave a copy of the warrant with Attachment B at SIM's office at the conclusion of the search. Rule 41(f)(3) of the Federal Rules of Criminal Procedure, on which defendant relies, provides:

> The officer executing the warrant must:
>
> > (A)  give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken; or
> >
> > (B)  leave a copy of the warrant and receipt at the place where the officer took the property.

Fed. R. Crim. P. 41(f)(3)(A) and (B).  The Government counters that even if the agent disregarded Rule 41(f)(3)(B) the court should not suppress the evidence since no constitutional infraction took place.

-7-

There can be no doubt that the agent transgressed Rule 41(f)(3)(B) when he failed to leave a copy of the warrant with Attachment B at SIM's office when the search was ended.  There is cogent authority that a non-constitutional violation of Rule 41 is cause to suppress evidence when the defendant has been prejudiced or the violation is intentional and deliberate. United States v. Simons, 206 F.3d 392, 403 (4th Cir. 2000); United States v. Burke, 517 F.2d 377, 386-87 (2d Cir. 1975).  In United States v. Hall, our Court of Appeals defined prejudice broadly in this context, "that is, prejudice in the sense that it offends concepts of fundamental fairness or due process."  505 F.2d 961, 964 (3d Cir. 1974) (emphasis added).

Here, the agent's act of omission was clearly intentional and deliberate and offends notions of fundamental fairness.  We are not dealing with a technical or inadvertent error.  It is not a situation where an agent, at the end of a busy day searching SIM's office, simply forgot to leave the warrant.  The circumstances were particularly egregious because the agent was not acting simply on his own but was doing the bidding of higher level Government officials.  The Special Assistant United States Attorney in the Eastern District of Virginia obtained an order from a Magistrate Judge authorizing, if not in effect directing, the agent not to leave Attachment B on the premises in defiance of Rule 41(f)(3)(B).  They clearly did not want defendant to have notice of the full contents of the warrant when she returned to her office.

The Government, as noted above, did not request that the warrant or its attachments be sealed and has offered us no explanation for the deliberate withholding of the attachments. The Government's motion to seal did not explain how the disclosure of Attachment B at the completion of the search would have compromised the investigation or risked anyone's safety.  In fact, the Assistant United States Attorney for the Eastern District of Pennsylvania who represented the Government at the present hearing advised the court that she knows of no instance where authorization to withhold the property description of a warrant has ever been requested in this District.

The primary purpose of the exclusionary rule, of course, is to deter unlawful police conduct.  United States v. Calandra, 414 U.S. 338 (1974).  The issuance of a warrant and reliance on it by a law enforcement officer can protect evidence from suppression only if the reliance of the officer was objectively reasonable.  United States v. Leon, 468 U.S. 897, 919-20 (1984).  In Groh, the Supreme Court held that it was not reasonable for the law enforcement officer to rely on a warrant issued by a Magistrate Judge which contained no description of the property to be seized.  540 U.S. at 561 n.4.  Likewise, it was not reasonable for the agent to rely on a Magistrate Judge's order authorizing him to disregard Rule 41(f)(3)(B).

Suppressing evidence is always a severe remedy, and we do not do so lightly for a Rule 41 violation.  However, the violation of Rule 41(f)(3)(B), even if not of constitutional

-9-

dimension, was clearly intentional and deliberate and
fundamentally unfair to defendant.  The violation was initiated
by a Special Assistant United States Attorney in Virginia and
carried out by a GSA special agent.  Absent any legitimate
explanation, we can only conclude that the intended effect was to
deprive the defendant of particularized notice of the property
authorized to be seized pursuant to the warrant and to impede a
subsequent challenge to the validity of the search and seizure.
We are not treating with trifles.  Under the unusual
circumstances presented, we will grant the motion of defendant to
suppress all evidence seized from the office of SIM on May 5,
2005.  We see no other appropriate remedy to deter such conduct.

                              III.

          Even if the violation of Rule 41(f)(3)(B) does not
compel the suppression of all evidence, defendant asserts that
the description of what was to be seized was constitutionally
defective under the Fourth Amendment, which requires that no
warrant shall issue except one "particularly describing the place
to be searched, and the persons or things to be seized."
Defendant contends that the warrant either constituted a general
warrant or is overly broad.  We agree with the defendant in part.

          The language of the Fourth Amendment prohibits general
warrants authorizing "a general, explanatory rummaging in a
person's belongings."  Coolidge v. New Hampshire, 403 U.S. 443,
467 (1971).  The Fourth Amendment also requires a warrant to be
supported by an affidavit of probable cause.  Thus, we must

                              -10-

compare the wording of the warrant against the language of the probable cause affidavit on which the warrant is predicated. United States v. Christine, 687 F.2d 749 (3d Cir. 1982).  Putting aside the issue of a general warrant, a warrant runs afoul of the Fourth Amendment when it is broader in scope than justified by the supporting affidavit.  Id. at 753.  The court must "strike ... from a warrant those severable phrases and clauses that are invalid for lack of probable cause or generality and preserve those severable phrases and clauses that satisfy the Fourth Amendment."  Any redaction is subject to the objective reasonableness exception in Leon explained above.

        Here, certain paragraphs of Attachment B, if not a general warrant, authorized the executing agents to seize items whose description far exceeds what is supported by the probable cause affidavit.  Paragraph A.2 of Attachment B stated:

> Any and all personal and/or business banking records either held jointly or independently by Mary Louise Denese Slaey, including but not limited to monthly savings and checking statements, canceled checks and banking communications, deposit tickets, withdrawal receipts, certificates of deposit, pass-books, money drafts, money orders (blank or endorsed), check cashing logs, wire transfer logs, cashier's checks, bank checks, safe deposit box keys, money wrappers, and any other financial records for Denese Slaey and/or Systems Integration and Management.

        The conspiracy described in the affidavit of probable cause was a scheme to defraud the GSA under a certain contract between GSA and SIM.  As part of the scheme, fraudulent and fictitious invoices were submitted to GSA.  Donald Nicholson, a

-11-

GSA official, who is a co-defendant here, participated and received from defendant a part of the proceeds of this illicit activity.  According to the affidavit, the conspiracy lasted from September, 1998 to January, 2001.  Paragraph A.2 of Attachment B has no time limitation whatsoever and does not confine the seizure of the defendant's or SIM's records to those involving the GSA contract in issue.  The GSA agents were authorized to seize all of defendant's personal checking account records, theoretically going back decades and extending well beyond the end of the alleged conspiracy.  Even if we struck the word "personal," it would not cure the defect.  SIM was a legitimate business having other contracts and transactions not related to this matter.  Nonetheless, the agents were authorized to seize and review all business banking records pertaining to defendant and SIM.  Clearly, there was no basis in the affidavit of probable cause for such a wide sweep.

Paragraph A.3 of Attachment B allowed the following seizure:

> Any and all invoices, billings, and/or claims submitted to GSA under the SIM BOA and/or made reference to any task order under the SIM BOA.  Any and all personnel files for all current and former employees for the period September 1, 1998 to the present.  Any and all time sheets for all employees who had worked for SIM between September 1, 1998, to the present.  Any and all travel vouchers and/or supporting documentation associated with travel costs for all SIM personnel, between September 1, 1998 to the present.  Any and all supporting documentation for all "indirect" and "direct" costs billed by SIM for all task orders under the SIM BOA.

-12-

We also find this paragraph to be overly broad in that it described any and all personnel files, any and all time sheets, and any and all travel vouchers for SIM employees beyond the end of the conspiracy in January, 2001. The words "to the present" meant up until May 4, 2005, the date the warrant was issued. Moreover, the records of SIM employees to be seized were not limited in any way to the GSA contract in issue. Since under Christine we cannot rewrite the attachment to change the time frame or otherwise to modify the language but may only sever and redact invalid clauses or phrases, we have no choice but to excise the second, third, and fourth sentences of Paragraph A.3 as not supported by the affidavit of probable cause.

Finally, Paragraph B of Attachment B is constitutionally infirm. Assuming the paragraph is not deemed a general warrant, it still granted impermissibly expansive authorization to seize items far beyond what is countenanced by the supporting affidavit. It provided in relevant part:

> Any records, documents, materials and files maintained on a computer. The terms "records," "documents," "materials" and "files" include all information preserved in any form, visual, magnetic, electronic or aural, including the originals and all non-identical copies thereof, whether different from the original by reason of any notation made on such copies or otherwise ...."

Again, the reference to the records and materials maintained on the various computers at SIM's office was without limitation as to subject matter and as to time. SIM, as noted above, was in the internet technology business and had other

-13-

clients besides GSA.  The description included the right to seize
personal information of defendant not relevant in any way to the
contents of the probable cause affidavit.

It was Agent Adams who signed the application and
affidavit of probable cause.  He had to know that the scope of
Attachment B significantly exceeded the scope of the affidavit.
No objectively reasonable law enforcement officer could have
relied on the issuance of the warrant by the Magistrate Judge to
conduct a search pursuant to the patently defective parts of
Attachment B, described above.  See Leon, 468 U.S. at 919-20.
This is not a "doubtful or marginal case" where a law enforcement
officer may properly rely on a Magistrate Judge's determination.
Id. at 914.

Accordingly, if we are incorrect that all evidence
should be suppressed because of the deliberate violation of Rule
41(f)(3)(B), we conclude that the warrant must be redacted and
all evidence seized under Paragraphs A.2 and B of Attachment B
and all evidence seized under the second, third, and fourth
sentences of Paragraph A.3 must be suppressed.  See Christine,
687 F.2d 749.

-14-

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL ACTION |
| | : | |
| v. | : | |
| | : | |
| MARY LOUISE DENESE SLAEY | : | NO. 05-704-2 |

## ORDER

AND NOW, this 26th day of April, 2006, for the reasons set forth in the accompanying Memorandum, it is hereby ORDERED that the motion of defendant Mary Louise Denese Slaey to suppress evidence seized at the office of Systems Integration & Management, Inc. on May 5, 2005 is GRANTED.

BY THE COURT:


/s/ Harvey Bartle III
                                              C.J.